**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| EDYTA TABOR, individually and on behalf of all others similarly situated, | Case No.: 1:16-cv-04008 |
| Plaintiff, | |
| v. | |
| FOURSQUARE LABS, INC., a Delaware corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Edyta Tabor brings this Class Action Complaint and Demand for Jury Trial against Defendant Foursquare Labs, Inc. to stop its practice of making unwanted and unsolicited text message calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Defendant Foursquare operates a social networking and messaging service called Swarm. In an effort to quickly gain more users for Swarm's mobile software application, Foursquare sent text message advertisements to consumers' cellular telephones urging them to download the app on their mobile devices. The problem is, Foursquare obtained the numbers to send its text messages to by first offering its existing users the chance to message friends through its app and then hijacking those messages with its own advertisements. This marketing technique is commonly known as "spam-viting" or "growth hacking," and is used by mobile app

1

developers (like Foursquare) to quickly gain a larger user base for the purpose of inflating their valuation and attracting investors.

2.     Foursquare did not obtain prior express consent from such consumers to make such text message calls and, therefore violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA").

3.     The TCPA was enacted to protect consumers from unsolicited and unwanted calls, exactly like those alleged in this case. Foursquare made these text message calls despite the fact that neither Plaintiff nor the other members of a putative Class of consumers (defined below) provided Foursquare with their prior express consent to receive such text messages. Similarly, the ICFA was enacted to protect Illinois consumers from unfair and unlawful methods of competition, such as unwanted and unlawful text message advertisements calls made in violation of the TCPA.

4.     By sending the spam text messages at issue, Foursquare has violated the privacy and statutory rights of Plaintiff and the Class and caused them harm, not only by subjecting them to the aggravation that necessarily accompanies the receipt of unsolicited spam text messages, but also because consumers frequently have to pay their wireless providers for the receipt of such unsolicited text message calls.

5.     As a result, Plaintiff, on behalf of herself and the putative Class, seeks an injunction requiring Foursquare to cease all unlawful text messaging activities alleged in this Complaint, and an award of statutory damages to Plaintiff and the Class for each such violation, together with costs and reasonable attorneys' fees.

**PARTIES**

6.      Plaintiff Edyta Tabor is a natural person and citizen of the State of Illinois.

7.      Defendant Foursquare Labs, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at 568 Broadway, 10th Floor, New York, New York 10012. Foursquare conducts business throughout this District, the State of Illinois, and the United States.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the action arises under the TCPA, which is a federal statute. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims are so related to her federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court has personal jurisdiction over Foursquare because it solicits consumers in this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District (inasmuch as Foursquare made unsolicited text message calls to Plaintiff and other putative Class members located in this District).

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District inasmuch as Foursquare made (and continues to make) unsolicited text message calls to putative Class members located in this District. Additionally, venue is proper because Plaintiff Tabor resides in this District.

**COMMON FACTUAL ALLEGATIONS**

11.      Given the relatively low cost associated with sending bulk text messages, many

3

marketers and mobile app developers have turned to disseminating advertisements or promotions through mass text message campaigns.

12.     Seeking to market its Swarm mobile application to consumers throughout the United States and, in turn, grow its user base, Foursquare decided to engage in this especially invasive form of advertising.

13.     Worse yet, Foursquare obtained the recipients' cell phone numbers by first convincing its existing users to message their friends through its app and then replacing those messages with its own text message advertisements urging the recipients to download the Swarm app.

14.     Specifically, when a consumer downloads the Swarm app and attempts to send a message through its interface, Foursquare captures the recipient's phone number and, instead of delivering the original message, replaces the user's message with an advertisement urging the recipient to download its mobile app (the "Swarm Promotional Text Message").

15.     For instance, on or around March 29, 2016, Foursquare sent (or caused to be sent) the Swarm Promotional Text Message to Plaintiff Tabor's cellular telephone. The Swarm Promotional Text Message originated from a phone number—765.780.4047—that Plaintiff did not recognize. The body of the text message read:

> Hey [Name of Recipient]! [Name of Sender]
> sent you a message from Swarm.
>
> Reply here[1] or download the Swarm
> app to keep up and meet up with
> friends! http://swarmapp.com/get
> Reply EXIT to leave this group
> or STOP to end all messages.

---

[1]     If the recipient replied to one of these messages (as directed in the example above), the purported sender would never actually receive a reply.

4

16.     Each Swarm Promotional Text Message received by Plaintiff and the other putative Class members were substantially similar in that they all contained a direct hyperlink to Foursquare's website. These hyperlinks were not specific to the recipient; rather, they directed every recipient to Foursquare's main Swarm webpage.

17.     Tellingly, if consumers, including Plaintiff or other putative Class members, navigated to the hyperlink contained in the Swarm Promotional Text Message, the effect of Foursquare's text message marketing campaign became apparent. That is, after consumers clicked on the hyperlink, Foursquare would immediately direct them to its webpage, where it urged consumers to download the Swarm app. (*See* Figure 1 below, showing a screenshot of the Foursquare website where the Swarm Promotional Text Message directs consumers to.)



(**Fig. 1.**)

18.     Foursquare created the promotional text message campaign at issue and maintained exclusive control over the manner and means by which such text messages were sent.

19.     Plaintiff and members of the putative Class did not consent to, request, or otherwise desire or permit Foursquare to transmit the Swarm Promotional Text Messages to their

cellular telephones.

20.      Foursquare did not obtain consent from Plaintiff or the putative Class to make promotional text message calls to their cellular telephones.

21.      The Swarm Promotional Text Messages alleged herein were not initiated by any other consumer and were solely made by Foursquare. Consumers utilizing the Swarm app, and believing they were sending a message via the Swarm app, were unaware that the Swarm Promotional Text Messages would be sent at all or that their messages would not reach their intended recipients. They did not view the Swarm Promotional Text Message before it was sent or have an opportunity to edit its content.

22.      Foursquare made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers.

23.      On information and belief, Foursquare made these text message calls to Plaintiff and putative Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

## CLASS ACTION ALLEGATIONS

24.      **Class Definitions**: Plaintiff Tabor brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and a class and subclass defined as follows:

> **Class**: All persons in the United States who received one or more of the Swarm Promotional Text Messages from Defendant Foursquare Labs, Inc.

> **Illinois Subclass**: All members of the Class who reside in the State of Illinois.

Excluded from the Class and Illinois Subclass (collectively the "Class," unless otherwise indicated) are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any

entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

25. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent the Swarm Promotional Text Messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

26. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

**The Class**:

    (a)    whether Defendant's conduct violated the TCPA;

    (b)    whether Defendant sent the Swarm Promotional Text Messages using an automatic telephone dialing system ("ATDS"), as contemplated by the TCPA;

    (c)    whether Defendant systematically sent the Swarm Promotional Text Messages to persons who did not previously provide it with prior express consent to receive such text message calls; and

      (d)     whether Plaintiff and the members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**The Illinois Subclass**:

      (a)     whether Defendant systematically sent the Swarm Promotional Text Message to persons who did not previously provide it with prior express consent to receive such text message calls;

      (b)     whether Defendant's conduct violates the ICFA; and

      (c)     whether Plaintiff and the members of the Illinois Subclass are entitled to actual damages, attorneys' fees, and costs.

27.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited text message calls.

28.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

29.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to

Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

30.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

31.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

32.     In an effort to promote its mobile app, Foursquare made unsolicited and unwanted text message calls to Plaintiff's and the Class's cellular telephones without their prior express consent.

33.     Foursquare sent the Swarm Promotional Text Messages to Plaintiff's and the Class's cellular telephone numbers using equipment that had the capacity to store or produce

9

telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers *en masse*.

34.     Foursquare utilized equipment that sent the Swarm Promotional Text Messages to Plaintiff and other members of the putative Class simultaneously and without human intervention.

35.     By sending the Swarm Promotional Text Messages to Plaintiff's and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Foursquare violated 47 U.S.C. § 227(b)(1)(A)(iii).

36.     As a result of Foursquare's unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things*,* a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

37.     Because Foursquare's misconduct was willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the putative Class.

38.     Additionally, as a result of Foursquare's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A) to ensure that Foursquare's violations of the TCPA do not continue into the future.

**SECOND CAUSE OF ACTION**
**Violation of 815 ILCS 505/1, *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass)**

39.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

40.     The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices.

10

41.     Plaintiff and the members of the Illinois Subclass are "persons" under the IFCA. *See* 815 ILCS 505/1(c).

42.     Foursquare is a business entity or association that operates a service through its Swarm mobile app and, as such, is a "person" engaged in "trade" and "commerce" under the IFCA. *See* 815 ILCS 505/1(c).

43.     Defendant engaged in unfair acts and practices in violation of 815 ILCS 505/2 by sending (or having sent on its behalf) the unwanted and unsolicited Swarm Promotional Text Messages to Plaintiff and the members of the Illinois Subclass. In particular, Foursquare's text messaging practices are unfair business practices because they are deceptive and cause substantial injury to the call recipients.

44.     Foursquare's unwanted and unsolicited Promotional Text Messages are contrary to public policy because they are unlawful under the TCPA, as described in the First Cause of Action above.

45.     As a result of Foursquare's conduct, Plaintiff and each Illinois Subclass member suffered damages in the form of the cost associated with receiving the unwanted and unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription services (*i.e.*, the value of such equipment and services is higher when unencumbered by repeated and unwanted text message advertisements), the measureable amounts of time lost answering and deleting the unwanted text messages, the wear and tear caused to their telephone equipment, the loss of battery charge (which becomes diminished with each incoming text message), the loss of battery life (which has a finite number of charging cycles), and the per-kilowatt electricity costs required to recharge their cellular phones as a result

of such text messages. While the economic damages to Plaintiff and each individual of the Illinois Subclass members may be small, their aggregate injuries are substantial.

46.     In addition, Foursquare's unlawful and unfair text message advertising (*i.e.*, spam-viting) gave it an unfair competitive advantage over businesses that advertise their mobile applications lawfully.

47.     Foursquare's unlawful and unfair business practices occurred during the course of trade or commerce, and were material and a direct cause of the injuries suffered by Plaintiff and the members of the Illinois Subclass.

48.     Foursquare's unfair and unlawful conduct negatively affects large numbers of Illinois residents, and these effects are not outweighed by any countervailing benefits to consumers.

49.     Therefore, Plaintiff seeks an order: (i) permanently enjoining Foursquare from continuing to engage in the unfair conduct described here; (ii) requiring Foursquare to pay actual and compensatory damages; and (iii) requiring Foursquare to pay interest, attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Edyta Tabor, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the Class as defined above, appointing Plaintiff Edyta Tabor as the representative of the Class, and appointing her counsel as Class Counsel;

(b)     An order declaring that Foursquare's actions, as set out above, violate the TCPA and ICFA;

(c)     An order declaring that Foursquare's telephone calling equipment constitutes an

automatic telephone dialing system under the TCPA;

(d)      An injunction requiring Foursquare to cease all unlawful text message activities and enjoining Foursquare from using automated or computerized dialing equipment to place text message calls without consent;

(e)      An order requiring Foursquare to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

(f)      An order requiring Foursquare to permanently cease-and-desist from all unlawful conduct as alleged herein and otherwise protecting the interests of the Class;

(g)      An award of actual, statutory, and treble damages;

(h)      An award of reasonable attorneys' fees and costs; and

(i)      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**EDYTA TABOR**, individually and on behalf of all others similarly situated,

Dated: April 4, 2016                    By: /s/ Ari J. Scharg
                                                 One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378